UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NASIR PEREZ,

                    Petitioner,

          v.

UNITED STATES OF AMERICA,

                    Respondent.

_____

DAMIEN RUTLEDGE,

                    Petitioner,

          v.

UNITED STATES OF AMERICA,

                    Respondent.

_____

JONATHAN MIDDLEBROOKS,

                    Petitioner,

          v.

UNITED STATES OF AMERICA,

                    Respondent.

_____

DYLAN MILLER,

                    Petitioner,

          v.

UNITED STATES OF AMERICA,

                    Respondent.

_____

**DECISION AND ORDER**

6:18-cr-06025 EAW
6:22-cv-06288 EAW

6:18-cr-06048 EAW
6:23-cv-06282 EAW

6:18-cr-06049 EAW
6:23-cv-06298 EAW

6:18-cr-06077 EAW
6:23-cv-06335 EAW

I.    **INTRODUCTION**

Represented by counsel, petitioners Nasir Perez ("Perez"), Damien Rutledge ("Rutledge"), Jonathan Middlebrooks ("Middlebrooks"), and Dylan Miller ("Miller") (collectively, "Petitioners" or "Defendants") have each moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct their sentences imposed pursuant to a plea agreement. Although charged in separate cases, each Petitioner pleaded guilty to a series of Hobbs Act or attempted Hobbs Act robberies they committed together, between September 3, 2017, and September 23, 2017.  (*See United States v. Perez*, Case No. 6:18-cr-06025-EAW (W.D.N.Y. 2017) ("*Perez*"), Dkt. 34; *United States v. Rutledge*, Case No. 6:18-cr-06048-EAW (W.D.N.Y. 2017) ("*Rutledge*"), Dkt. 31; *United States v. Middlebrooks*, Case No. 6:18-cr-06049-EAW (W.D.N.Y. 2017) ("*Middlebrooks*"), Dkt. 32; *United States v. Miller*, Case. No. 6:18-cr-06077-EAW (W.D.N.Y. 2017) ("*Miller*"), Dkt. 17).[1]  Petitioners argue that their convictions for possession of, or aiding and abetting the possession of, a firearm discharged in furtherance of a crime of violence under 18 U.S.C. § 924(c), are invalid under the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022).  For the reasons set forth below, the Court concludes that Petitioners' motions to vacate should be granted, their convictions on count 6 are hereby vacated, and the Court will schedule *de novo* re-sentencings on the remaining charges.

---

[1]    All references to the docket in the instant Decision and Order are to the dockets in the criminal actions.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Perez, Middlebrooks, and Rutledge were initially charged in October 2017 by criminal complaint with violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Threats or Violence) and 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (Aiding and Abetting the Brandishing of a Firearm during a Crime of Violence), committed on September 23, 2017. (*Perez*, Dkt. 1; *Middlebrooks*, Dkt. 1; *Rutledge*, Dkt. 1).  Miller was charged by criminal complaint in January 2018, with violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Threats or Violence) and 18 U.S.C. § 924(c)(1)(A)(ii) (Brandishing of a Firearm during a Crime of Violence), committed on September 14, 2017, and September 23, 2017.  (*Miller*, Dkt. 1).

Thereafter, Petitioners waived indictment and pleaded guilty pursuant to a six-count felony information.  (*Perez*, Dkt. 32, Dkt. 33, Dkt. 34; *Rutledge*, Dkt. 29, Dkt. 30, Dkt. 31; *Middlebrooks*, Dkt. 30, Dkt. 31, Dkt. 32; *Miller*, Dkt. 15, Dkt. 16, Dkt. 17).  Petitioners pleaded guilty to the following crimes: violation of 18 U.S.C. § 1951(a) (Hobbs Act robbery), for robberies committed on September 3, 2017, September 14, 2017, September 18, 2017, and September 23, 2017 (counts 1 through 4); violation of 18 U.S.C. § 1951(a) (attempted Hobbs Act robbery), for a robbery committed on September 23, 2017 (count 5); and violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2 (with respect to Perez, Rutledge, and Middlebrooks, aiding and abetting the possession of a firearm in furtherance of a crime of violence, involving a discharge, and with respect to Miller, possession and discharge of a firearm in furtherance of a crime of violence), during the attempted robbery charged in count 5 on September 23, 2017.  (*Perez*, Dkt. 34; *Rutledge*, Dkt. 31; *Middlebrooks*, Dkt.

32; *Miller*, Dkt. 17). In connection with their pleas to counts 1 through 4 of the information, Petitioners admitted that Miller pointed a firearm at the store employees during those robberies—but the use of the firearm was not charged in connection with those counts. (*Id.*). Rather, the only charge involving a firearm used in furtherance of a crime of violence was count 6, and it was predicated on the attempted Hobbs Act robbery charged in count 5.

The Court imposed sentences as follows, none of which were pursued by means of a direct appeal:

1.     On August 21, 2018, Perez was sentenced to 60 months of incarceration and three years of supervised release on each of counts 1 through 5, to run concurrently. (*Perez*, Dkt. 43 & Dkt. 44). Perez was also sentenced to 120 months of incarceration, to run consecutively, and three years of supervised release, to run concurrently, on count 6, for a total term of imprisonment of 180 months. (*Id.*).

2.     On August 21, 2018, Middlebrooks was sentenced to 70 months of incarceration and three years of supervised release on each of counts 1 through 5, to run concurrently. (*Middlebrooks*, Dkt. 40 & Dkt. 41). Middlebrooks was also sentenced to 120 months of incarceration, to run consecutively, and three years of supervised release, to run concurrently, on count 6, for a total term of imprisonment of 190 months. (*Id.*).

3.     On October 3, 2018, Miller was sentenced to 121 months of incarceration and three years of supervised release on each of counts 1 through 5, to run concurrently. (*Miller*, Dkt. 26 & Dkt. 27). Miller was also sentenced to 120 months of incarceration, to run consecutively, and three years of supervised release, to run concurrently, on count 6, for a total term of imprisonment of 241 months. (*Id.*).

4.     On January 11, 2019, Rutledge was sentenced to 78 months of incarceration and three years of supervised release on each of counts 1 through 5, to run concurrently. (*Rutledge*, Dkt. 40 & Dkt. 41).

Rutledge was also sentenced to 120 months of incarceration, to run consecutively, and three years of supervised release, to run concurrently, on count 6, for a total term of imprisonment of 198 months. (*Id.*).

The Supreme Court decided *Taylor* on June 21, 2022, holding that attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c)(3)(A)'s elements clause. 596 U.S. at 851. *Taylor* abrogated the decision holding otherwise as a matter of first impression by the Second Circuit in *United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021), *cert. granted, judgment vacated sub nom. Nix v. United States*, 142 S. Ct. 2860 (2022), *and cert. granted, judgment vacated*, 142 S. Ct. 2863 (2022).

Perez filed his § 2255 motion on June 29, 2022—just seven days after the *Taylor* decision. (*Perez*, Dkt. 56). The government filed opposition papers (*id.*, Dkt. 68), and Perez filed a reply (*id.*, Dkt. 71). Rutledge filed his § 2255 motion on May 23, 2023, less than one year after the *Taylor* decision. (*Rutledge*, Dkt. 58). The government filed opposition papers (*id.*, Dkt. 62), and Rutledge filed a reply (*id.*, Dkt. 65). Middlebrooks filed his § 2255 motion on May 31, 2023, less than one year after the *Taylor* decision. (*Middlebrooks*, Dkt. 53). The government filed opposition papers (*id.*, Dkt. 56), and Middlebrooks filed a reply (*id.*, Dkt. 59). Miller filed his § 2255 motion on June 19, 2023, less than one year after the *Taylor* decision. (*Miller*, Dkt. 58). The government filed opposition papers (*id.*, Dkt. 61), and Miller filed a reply (*id.*, Dkt. 62).

On July 26, 2024, the Court issued the same Order in each case, requiring supplemental briefing on three issues—specifically, (1) whether Petitioner is "actually innocent" such that procedural default (*i.e.*, his failure to raise this issue on appeal) can be

excused; (2) the scope of Petitioner's collateral attack waiver; and (3) the appropriate remedy should the Court find relief warranted.  (*Perez*, Dkt. 77; *Rutledge*, Dkt. 68; *Middlebrooks*, Dkt. 60; *Miller*, Dkt. 63).  Petitioners and the government submitted supplemental briefing on November 4, 2024.  (*Perez*, Dkt. 80 & Dkt. 81; *Rutledge*, Dkt. 73 & Dkt. 74; *Middlebrooks*, Dkt. 64 & Dkt. 65; *Miller*, Dkt. 68 & Dkt. 69).  Perez and Miller both submitted replies to the government's supplemental briefing on November 18, 2024.  (*Perez*, Dkt. 82; *Miller*, Dkt. 70).

## III.  DISCUSSION

The sole issue raised in Petitioners' motions to vacate is the validity of their convictions on count 6 considering the Supreme Court's decision in *Taylor*.  The government does not argue that *Taylor* would not warrant vacating count 6—in other words, the parties agree that pursuant to *Taylor*, Petitioners' convictions under count 6 are invalid.  Rather, the government argues that Petitioners' claims (1) are unpreserved and procedurally barred since Petitioners did not raise them on appeal before the Second Circuit, and (2) their motions to vacate are barred by the collateral attack waiver included in Petitioners' plea agreements.  (*Perez*, Dkt. 68 & Dkt. 81; *Rutledge*, Dkt. 62 & Dkt. 74; *Middlebrooks*, Dkt. 56 & Dkt. 65; *Miller*, Dkt. 61 & Dkt. 69).  The Court considers these arguments below.

### A.  Procedural Default

"[A] collateral challenge may not do service for an appeal," *United States v. Frady*, 456 U.S. 152, 165 (1982), and so "[i]n general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal,"

*United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *Id.* at 231.

For the reasons explained in the undersigned's decision in *United States v. Castle*, Case No. 6:18-CR-06017-EAW (W.D.N.Y. 2015), Dkt. 80, Petitioners cannot demonstrate the former—that is, they cannot demonstrate cause and ensuing prejudice, since the legal issue presented by the instant motions to vacate was not "novel" at the time of Petitioners' guilty pleas, nor at the time of sentencing and judgment. That same reasoning applies here. That said, for the reasons explained below, the Court finds that Petitioners have established "actual innocence," and therefore an exception to their failure to raise this argument on direct appeal applies.

Petitioners pleaded guilty to the following charges: four counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (counts 1 through 4); one count of attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (count 5); and one count of discharging, or aiding and abetting the discharge of, a firearm in furtherance of a crime of violence—namely, the attempted Hobbs Act robbery charged in count 5—in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2 (count 6). Because *Taylor* held that attempted Hobbs Act robbery is not a crime of violence, the conviction on count 6 cannot stand. In other words, Petitioners are "actually innocent" of the § 924(c) charge for discharge of a firearm in furtherance of a crime of violence, since attempted Hobbs Act robbery is a non-violent crime.

Yet the inquiry does not end there. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624.

In connection with the Hobbs Act robberies charged in counts 1 through 4, Petitioners admitted that Miller possessed and pointed a handgun at a store employee during each of those robberies. Although the government could have charged Petitioners with additional § 924(c) charges for the Hobbs Act robberies charged in counts 1 through 4, the government elected to forgo those charges as part of the plea-bargaining process. Accordingly, whether Petitioners must demonstrate their innocence in connection with the § 924(c) charges forgone as part of the plea-bargaining process, hinges on whether those charges are "more serious" than the charge to which they pleaded guilty in count 6.

The government argues that the forgone § 924(c) charges are more serious than the charge to which Petitioners pleaded guilty in count 6 because at the time of the pleas the forgone charges mandated a consecutive sentence of 100 years in total (25 years on each, to run consecutively), which goes well beyond the 10-year mandatory minimum applicable to count 6. (*Perez*, Dkt. 81 at 1-4; *Rutledge*, Dkt. 74 at 1-4; *Middlebrooks*, Dkt. 65 at 1-4; *Miller*, Dkt. 69 at 1-4). The government further argues that if the seriousness of the forgone charges is judged by their maximum sentences—which is life imprisonment—Petitioners' showing of actual innocence must extend to the forgone charges. (*Perez*, Dkt. 81 at 1-4; *Rutledge*, Dkt. 74 at 1-4; *Middlebrooks*, Dkt. 65 at 1-4; *Miller*, Dkt. 69 at 1-4).

- 8 -

In response, Petitioners argue that the firearm charges that could have been pursued in connection with the robberies in counts 1 through 4 are less serious than the invalidated charge in count 6 (because those charges would not have involved the discharge of a firearm) and were, at most, equally as serious. (*Perez*, Dkt. 80 & Dkt. 82; *see also Rutledge*, Dkt. 73 at 1-2 (arguing that discharging a firearm is more serious than brandishing a firearm because a defendant who discharges a firearm would receive an increase in his base offense level of seven levels, whereas there is only a five-level increase for brandishing, and with respect to mandatory minimum sentences, brandishing a firearm carries a mandatory minimum sentence of seven years, whereas discharging a firearm carries a mandatory minimum sentence of 10 years); *Middlebrooks*, Dkt. 64 at 2-3 ("[C]ontrary to the government's position, the plea agreement did not drop any charges that would be considered 'more serious' than those to which Mr. Middlebrooks admitted guilt," since they did not involve discharge of the weapon, but rather mere possession or display); *Miller*, Dkt. 68 at 8 (noting that the forgone charges did not involve the discharge of a firearm, which was a key element of the vacated § 924(c) charge in count 6, and "[t]he seriousness of those charges—measured by the absence of a firearm discharge—does not meet the threshold required to extend the actual innocence inquiry to the foregone charge")).

For the reasons explained below, the Court agrees with Petitioners that the charges forgone as part of the plea agreement—the possession and brandishing of a firearm—are not as serious as the vacated charge in count 6 involving the discharge of the firearm. Accordingly, Petitioners need not establish actual innocence as to the forgone charges to overcome their procedural default.

The Supreme Court has not addressed how courts should determine "seriousness" of a crime for these purposes. *See, e.g.*, *United States v. Caso*, 723 F.3d 215, 222 (D.C. Cir. 2013) ("*Bousley* did not tell us which measure of seriousness to employ in determining which offenses are 'more serious.' Nor did it explain the rationale for requiring habeas petitioners to demonstrate their innocence of 'more serious' offenses."). Courts have taken different approaches to answer this question.

In *Smith v. Martinez*, No. 5:22-cv-01470-MWF (JDE), 2023 WL 2529757 (C.D. Cal. Feb. 22, 2023), *adopted*, 2023 WL 2529537 (C.D. Cal. Mar. 15, 2023), the court discussed two approaches taken by different circuits, including the Sixth Circuit, under which seriousness is determined by looking at the statutory maximums and minimums, versus the approach adopted by the D.C., Eighth, and Third Circuits, which is to compare the seriousness of the offenses by looking at the offense guideline range. *Id.* at *5. The court concluded that "the appropriate measure of seriousness of an offense must be derived from the Sentencing Guidelines calculation rather than just the statutory mandatory minimum/maximum because the Guidelines calculations give a better estimate of the seriousness of the offenses at issue." *Id.* at *6; *see also Caso*, 723 F.3d at 223 (concluding that "the appropriate measure of the seriousness of an offense must be derived from the Sentencing Guidelines rather than the statutory maximum penalty"); *Castillo v. United States*, No. 09-CV-4222 (ENV), 2011 WL 4592829, at *4 (E.D.N.Y. Sept. 30, 2011) (rejecting the government's position that the court should adopt a statutory maximum approach in making the seriousness determination, and "[f]ollowing the majority of circuits which have decided this issue . . . the Court will determine which of the two relevant counts

[the defendant] faced was the more serious crime by evaluating the sentencing guidelines range. . . ."); *but see United States v. Godfrey*, 616 F. Supp. 3d 267, 278 (S.D.N.Y. 2022) (comparing offense maximums, mandatory minimums, and felony class as means for determining seriousness, but declining to discuss how it arrived at the means for comparison).  As explained below, consideration of either the Sentencing Guidelines or the mandatory minimum sentences results in a finding that count 6—which involved the discharge of the firearm—is more serious than the forgone § 924(c) charges, which involved only possession and brandishing.

First, consistent with the approaches taken in *Caso* and *Smith*, the Court has considered the seriousness of the offenses by examining their treatment in the Sentencing Guidelines.  The Sentencing Guidelines impose more severe sentencing enhancements for discharging a firearm than brandishing it.  *See* U.S.S.G. § 2B3.1(b)(2) (for robbery offenses, providing for an increase of seven levels if a firearm was discharged, versus an increase of five levels if the firearm was brandished or possessed).  This reflects the common understanding of these terms—in other words, the discharge of a firearm, which could result in someone being shot and gravely injured, is more serious than possession or brandishing.  And here, the discharge of the firearm resulted in one of the defendants being shot.  Accordingly, under this approach, each forgone charge is less serious than the charge in count 6.

Second, an examination of the statutory mandatory minimums results in a finding that the forgone charges are less serious than count 6, because the mandatory minimum sentence for the discharge of a firearm in connection with a crime of violence is greater

than the mandatory minimum sentence for brandishing a firearm. Specifically, 18 U.S.C. § 924(c)(1)(A) imposes a mandatory minimum term of imprisonment of 10 years for the discharge of a firearm, but seven years for brandishing. Again, the mandatory minimum sentences reflect that the discharge of a firearm is more serious conduct than mere possession or brandishing. *See, e.g.*, *United States v. Beaudion*, 416 F.3d 965, 968 (9th Cir. 2005) (explaining that 18 U.S.C. § 924(c)(1) provides "a three-tier sentencing framework, increasing the mandatory minimum sentence in correlation to the severity of the firearm's involvement with the crime").

The government argues that if the forgone charges were judged by the mandatory minimum sentences in effect at the time of the plea in 2017, the forgone charges would be more serious because the mandatory minimum sentence of 25 years on each of the forgone charges, all to run consecutive, would result in a term of imprisonment of 100 years. The government's argument is flawed, for two reasons. First, the government cites no support for the proposition that it would be proper to aggregate the mandatory minimum sentences on counts 1 through 4 for purposes of demonstrating seriousness, as opposed to evaluating each count individually. Indeed, a forgone charge would not have required a more significant mandatory minimum if it was imposed before count 6 or any other § 924(c) sentence. Put another way, if Defendants were convicted of a § 924(c) count as related to each robbery and attempted robbery, count 6 would have carried a 25-year mandatory minimum sentence at the time of conviction, whereas at least one of the § 924(c) convictions would have carried the more lenient mandatory minimum. The Court is not persuaded that this is a proper means by which to evaluate seriousness under *Bousley*.

Second, the First Step Act ("FSA") changed the law in 2018. *See* FSA (P.L. 115-39). The FSA modified § 924(c) to provide that the mandatory minimum sentence of 25 years for a "second or subsequent" offense, applies only for conduct committed "after a prior conviction under this subsection has become final"—as opposed to another conviction in the same case. *See* 18 U.S.C. § 924(c)(1)(C). The government acknowledges this change in the law, but it appears to take the position that the Court should consider the mandatory minimum sentences as they existed at the time of the plea. The government cites no authority in support of this position, and its position arguably conflicts with its position on the FSA's retroactivity. *See Hewitt v. United States*, 145 S. Ct. 2165, 2171 n.3 (2025) (noting that while the government initially took the position that upon resentencing the benefits of the FSA were not available, it changed that position and agreed that if an offender is sentenced prior to enactment of the FSA but the sentence is subsequently vacated, the more lenient penalties under the FSA apply); *see also United States v. Nix*, No. 6:14-CR-06181 EAW, 2023 WL 4457894, at *1 (W.D.N.Y. July 11, 2023) ("While the case was being relitigated before the Second Circuit, on September 30, 2022, the government advised the Court and Defendants that it had reversed its prior position on the applicability of the FSA and now took the position that § 403 applied where a defendant had been sentenced at the time the FSA was enacted but the sentence was subsequently vacated (as in the case of Defendants)."). Thus, at bottom, the Court is not persuaded that the seriousness of the forgone charges should be judged by mandatory minimum sentences that no longer apply, and that could only be considered more significant if aggregated with other § 924(c) charges.

- 13 -

Finally, with respect to statutory maximums, both the forgone charges and count 6 carry a maximum sentence of life imprisonment—in other words, the charges are "equally serious" by this measurement. Having considered the law on this issue, the Court does not find that comparing offense maximums to be an appropriate way to measure severity. Many federal offenses carry a maximum term of life imprisonment, despite the conduct varying widely and despite distinct treatment under the Sentencing Guidelines. In other words, statutory maximums "provide the parties with little useful information," *Caso*, 723 F.3d at 224, and the Sentencing Guidelines give a more accurate estimate of the seriousness of the offenses at issue. For that reason, the Court finds that the statutory maximums carry little weight when determining seriousness.

The government argues that the logic of *Bousley*'s "more serious" rule applies to charges the government forwent that were "equally serious," citing to two out-of-circuit cases, *Caso*, 723 F.3d at 221-22, and *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003), as well as two Second Circuit summary orders, *Kinley v. Artus*, 571 F. App'x 30, 31 (2d Cir. 2014) and *Lyons v. LaClaire*, 571 F. App'x 34, 35 (2d Cir. 2014), wherein the court stated, in dicta, that the "factual innocence requirement applies not only to the count of conviction, but also to charges that are equally or more serious." (*Perez*, Dkt. 81 at 3; *Rutledge*, Dkt. 74 at 3; *Middlebrooks*, Dkt. 65 at 3; *Miller*, Dkt. 69 at 3). In response, Petitioners cite *Godfrey*, 616 F. Supp. 3d at 277, wherein the court held that the requirement of proving actual innocence for forgone charges applies only when the forgone charges are "more serious" than the vacated charge, and not to any "equally serious" or "less serious" charges that the government agreed to not prosecute pursuant to the plea agreement. (*See,*

*e.g.*, *Perez*, Dkt. 80 at 2; *Rutledge*, Dkt. 73 at 2; *Middlebrooks*, Dkt. 64 at 3; *Miller*, Dkt. 70 at 5).

As explained above, the Court has concluded that using the statutory maximums—which would suggest that the forgone charges and count 6 are "equally" serious—is not a useful means of measuring seriousness.[2]  Rather, based on the Sentencing Guidelines and statutory mandatory minimum sentences as applied to each charge separately, the forgone charges are less serious than count 6.  Thus, given that the Court has concluded that the charges the government forwent during the plea process are *less serious*—and not *equally serious*—to the vacated counts, the Court need not resolve whether the factual innocence requirement extends to charges that are equally as serious.

For those reasons, the Court finds that Petitioners have made a showing of actual innocence under *Bousley*.  Accordingly, their procedural default by failing to raise this issue on appeal is excused under the actual innocence exception.

### B.    <u>Collateral Attack Waiver</u>

The government next argues that Petitioners' motions to vacate are barred by the collateral attack waiver contained in their plea agreements.  (*Perez*, Dkt. 81 at 4; *Rutledge*, Dkt. 74 at 4; *Middlebrooks*, Dkt. 65 at 4; *Miller*, Dkt. 69 at 4).  Petitioners do not dispute

---

[2]    Even if the Court concluded that the proper way to measure seriousness was a comparison of the statutory maximums, the Second Circuit has not squarely resolved whether *Bousley*'s seriousness inquiry extends to charges that are equally as serious as the vacated charge.  The Court finds the reasoning employed in *Godfrey* to be persuasive—and in fact, *Bousley* limits itself to more serious charges.  *See Bousley*, 523 U.S. at 624 ("In cases where the Government has forgone *more serious charges* in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.") (emphasis added).

that they entered into the collateral attack waiver in their plea agreements knowingly and voluntarily. But they argue that the waivers, under which they waived the right to appeal their *sentence*, do not extend to the right to challenge their *convictions* pursuant to 28 U.S.C. § 2255. (*Perez*, Dkt. 80 at 3 & Dkt. 82 at 3; *Rutledge*, Dkt. 73 at 2; *Middlebrooks*, Dkt. 64 at 3; *Miller*, Dkt. 68 at 9 & Dkt. 70 at 5).

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016); *see also Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023) ("A waiver of the right to collaterally attack a conviction is presumptively enforceable."). Moreover, "[w]hile plea agreements are to be applied narrowly and construed strictly against the government, . . . exceptions to the presumption of the enforceability of a waiver occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *Sanford*, 841 F.3d at 580 (cleaned up).

In support of the assertion that Petitioners' motions to vacate are barred by the collateral attack waiver in their plea agreements, the government cites *Garcia-Santos v. United States*, 273 F.3d 506 (2d Cir. 2001). In *Garcia-Santos*, the petitioner moved to vacate his conviction based on "events that occurred after he waived the right to petition under § 2255," including that "his sentence was illegally disproportionate to those of codefendants and to other similarly situated offenders; his attorney was ineffective at sentencing for his failure to complain of the disparity; and he should have received a lesser sentence for various other reasons, including his post-offense rehabilitation," *id.* at 508-09—issues which all went to the validity of the petitioner's sentence, rather than the

validity of the underlying conviction itself.  The district court denied the motion, finding that the petitioner had waived his rights in the plea agreement.  *Id.* at 509 ("We uphold the effectiveness of Garcia-Santos's waiver of the right to attack his conviction by petition under § 2255, . . . and rule that the waiver applies to grounds that arise after, as well as before, he made the waiver.").

The Court does not find *Garcia-Santos* to be persuasive here.  First, *Garcia-Santos* does not squarely address the issue presented by Petitioners—in other words, whether a defendant waives his right to challenge an aspect of his *conviction* when, as part of the plea agreement, he waives the right to challenge his *sentence*.  Indeed, the attack mounted by the petitioner in *Garcia-Santos* concerned issues with his sentence—not the supportability of the underlying conviction.  In *United States v. Loumoli*, 13 F.4th 1006 (10th Cir. 2021), the Tenth Circuit addressed this distinction, explaining that a case the district court relied on, *United States v. Pam*, 867 F.3d 1191 (10th Cir. 2017), was not controlling with respect to the petitioner's § 2255 application:

> The § 2255 motion at issue in *Pam* is not similar to the motion filed by Loumoli.  Mr. Pam was sentenced based on the understanding he was "an armed career criminal . . . and therefore . . . subject to a mandatory minimum sentence of fifteen years' imprisonment pursuant to 18 U.S.C. § 924(e)(1)." In his § 2255 motion, Mr. Pam challenged his *sentence*, arguing it was unconstitutional in light of the Supreme Court's decision in *Johnson v. United States*, which struck down the residual clause of the Armed Career Criminal Act as unconstitutionally vague.  Loumoli, on the other hand, was not sentenced as an armed career criminal.  In his § 2255 motion, he challenged his *conviction* for using or carrying a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c), relying on the Supreme Court's opinion in [*United States v. Davis*, 588 U.S. 445 (2019)] . . . which invalidated the residual clause of 18 U.S.C. § 924(c) as unconstitutionally vague.  Thus, *Pam* involved a challenge to an ACCA sentence and this matter involves a challenge to a § 924(c) conviction.

> *Compare United States v. Driscoll*, 892 F.3d 1127, 1129 (10th Cir. 2018) (describing application of the ACCA as a "sentencing enhancement"), *with Rosemond v. United States*, 572 U.S. 65, 75, 134 S. Ct. 1240, 188 L.Ed.2d 248 (2014) (describing § 924(c) as a "freestanding offense"). Because of the fundamental differences in the claims made by Mr. Pam and Loumoli, our holding in *Pam* provides no support for the district court's conclusion that the claims raised in Loumoli's § 2255 motion fall within the scope of the Appeal Waiver.

*Loumoli*, 13 F.4th at 1008-09.

Second, the Court disagrees with the government's argument that the collateral attack waiver language in Petitioners' plea agreements is not materially different from the language in the plea agreement in *Garcia-Santos*. In *Garcia-Santos*, the language in the plea agreement specifically barred the petitioner from bringing *any* petition under § 2255. *See Garcia-Santos*, 273 F.3d at 507 (noting language in plea agreement that "[i]t is further agreed (i) that the defendant will neither appeal, *nor otherwise litigate under Title 28, United States Code, Section 2255*, any sentence within or below the stipulated Guidelines range . . .") (emphasis added). But here, Petitioners' plea agreements do not include language stating that Petitioners would not appeal, nor otherwise litigate, under § 2255. Rather, Petitioners' plea agreements state that each Petitioner "knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment . . . set forth in [the plea agreement]." (*Perez*, Dkt. 34 at ¶ 27; *Rutledge*, Dkt. 31 at ¶ 25; *Middlebrooks*, Dkt. 32 at ¶ 27; *Miller*, Dkt. 17 at ¶ 27). The plea agreements further provide that Petitioners "understand[ ] that by agreeing not to collaterally attack the sentence, [Petitioner] is waiving the right to challenge the sentence in the event that in the future [he] becomes

aware of previously unknown facts or a change in the law which [he] believes would justify a decrease in [his] sentence." (*Perez*, Dkt. 34 at ¶ 28; *Rutledge*, Dkt. 31 at ¶ 26; *Middlebrooks*, Dkt. 32 at ¶ 28; *Miller*, Dkt. 17 at ¶ 28).

At least three courts of appeals have held that "a defendant is not barred from challenging his conviction if he waives only his right to challenge his sentence." *Loumoli*, 13 F.4th at 1009 (citing *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006) ("A defendant's waiver of his right to appeal a sentence is just that: it does not also constitute a waiver of his right to challenge a conviction."); *United States v. Spear*, 753 F.3d 964, 970 (9th Cir. 2014) ("[A] defendant's knowing and voluntary waiver of his right to appeal his *sentence* does not inherently encompass a knowing and voluntary waiver of his right to appeal his conviction.")); *see also United States v. Ortega-Hernandez*, No. 12-cr-00014 (APM), 2023 WL 4419770, at *3 (D.D.C. July 10, 2023) (holding that the defendant's waiver of a collateral attack extended only to "his sentence"). At least one court of appeals has reached the opposite conclusion. *See Rudolph v. United States*, 92 F.4th 1038, 1043 (11th Cir. 2024) ("The text of 28 U.S.C. § 2255, the history of that same statute, and the habeas corpus right that it codified, all point in the same direction: § 2255 is a vehicle for attacking sentences, not convictions.").

The Second Circuit does not appear to have decided this issue. Thus, with no binding authority on this precise issue, the Court finds the Tenth Circuit's reasoning in *Loumoli* to be persuasive—that is, the concepts of conviction and sentence are distinct. *Loumoli*, 13 F.4th at 1008 (discussing a petitioner's challenge to his sentence, as distinct from a challenge to a conviction). Here, the plea agreements plainly state that Petitioners

waived their right to appeal or collaterally attack *any component of a sentence* imposed by the Court which falls within or is less than the sentencing range for imprisonment. *Id.* at 1009 (noting that "the plain language of the plea agreement . . . states only that Loumoli is prohibited from challenging his sentence").

As noted above, ambiguities in a plea agreement are construed against the government. *Sanford*, 841 F.3d at 580. If the government had intended Petitioners to waive the right to challenge their convictions in addition to their sentences, it could have drafted the plea agreements to include an express waiver of the right to challenge their convictions. But the government may not simply assume that the waiver contained in the plea agreements constitutes a general waiver of all appeal rights. *See, e.g.*, *Palmer*, 456 F.3d at 488 ("The main waiver paragraph of the agreement . . . refers to sentencing appeals and collateral attacks. The first question is whether the language barring a sentencing appeal bars appeal of a conviction. We have rejected reading sentencing appeal waivers that broadly in the past."). The government "is entitled to receive 'what it bargains for but nothing more.'" *Spear*, 753 F.3d at 970 (concluding that "[b]ecause the scope of Spear's appellate waiver concerned only his sentence and the issues raised in this appeal concern only his conviction, Spear did not waive his right to bring this appeal"). Other than the *Garcia-Santos* case, the government has provided no further authority supporting its position that the collateral attack waiver in the plea agreements should be read broadly to apply to challenges to convictions. For those reasons, the Court concludes that the collateral attack waiver included in Petitioners' plea agreements—which states specifically that they waive their right to appeal and collaterally attack any component of a sentence

- 20 -

imposed by the Court that falls within or is less than the sentencing range for imprisonment—does not preclude them from challenging the validity of their convictions under 18 U.S.C. § 924(c).[3]

### C.    <u>Remedy</u>

Having determined that Petitioners did not procedurally default in bringing their motions to vacate because they are actually innocent of the charge to which they pleaded guilty, and also that their motions to vacate their convictions are not barred by the collateral attack waiver in their plea agreements, the Court turns to the appropriate remedy for vacating count 6.

"28 U.S.C. § 2255 allows prisoners in federal custody to attack the legality of their convictions or sentences collaterally.  When a federal prisoner successfully challenges one or more of his convictions or sentences as invalid, § 2255(b) gives the district court, in certain situations, the discretion to choose among four remedies: the court may discharge the petitioner, resentence them, grant them a new trial, or correct their sentence."  *Kaziu v. United States*, 108 F.4th 86, 87 (2d Cir. 2024).  "In interpreting this statutory language, we have followed the principle that section 2255 confers broad remedial powers on district

---

[3]    Some courts have concluded that collateral attack waivers barring a defendant from challenging a conviction could otherwise be set aside when enforcing such a waiver would result in the violation of a fundamental right.  *See, e.g.*, *United States v. Rivera*, No. 08-CR-115 (NGG), 2023 WL 1766209, at *3 (E.D.N.Y. Feb. 3, 2023) (concluding that collateral attack waiver did not bar the petitioner from challenging his conviction under *Davis*, since the petitioner was "currently incarcerated in part for a conviction on the basis of conduct that is not criminal," and noting that "a number of courts in this district have determined that collateral attack waivers cannot bar a challenge to a conviction under *Davis*") (collecting cases).  The parties have not addressed this issue in connection with briefing on the motions, and thus the Court does not reach it.

courts." *Tellier v. United States*, No. 21-2959, 2023 WL 3608394, at *2 (2d Cir. May 24, 2023).    "Notably, when the sentences that are the subject of the petition are 'truly interdependent,' a district court has authority to choose from the remedial options set forth in section 2255—and thus has discretion to conduct de novo resentencing on non-vacated counts.  But if resentencing would be 'strictly ministerial' or an 'empty formality,' such as when one or more of the sentences carry mandatory minimum sentences of life imprisonment, then a district court does not abuse its discretion by declining to conduct de novo resentencing on counts that are not vacated." *Id.* (citations omitted).

The government contends that if count 6 is vacated, the Court should conduct a *de novo* resentencing, which accounts for all facts and circumstances of the case—specifically, to reimpose the same sentence previously imposed by allocating the time differently between counts 1 through 5, to reach the same result.  (*Perez*, Dkt. 81 at 6-7; *Rutledge*, Dkt. 74 at 6-7; *Middlebrooks*, Dkt. 65 at 6-7; *Miller*, Dkt. 69 at 6-7).  In support of this position, the government cites *United States v. Pena*, 58 F.4th 613 (2d Cir. 2023), which supports that a *de novo* resentencing is appropriate.  (*Perez*, Dkt. 81 at 7; *Rutledge*, Dkt. 74 at 7; *Middlebrooks*, Dkt. 65 at 7; *Miller*, Dkt. 69 at 7).  The government argues that "[s]imply eliminating the 10-year sentence on count 6 would be unjust in that it would be inconsistent with the parties' agreement," and would not account for many of the § 3553(a) factors.  (*Perez*, Dkt. 81 at 7-8; *Rutledge*, Dkt. 74 at 7-8; *Middlebrooks*, Dkt. 65 at 7-8; *Miller*, Dkt. 69 at 7-8).

The government further argues that if Petitioners are successful on their challenges, they could face charges under § 924(c) for the first forgone firearms offenses corresponding

to counts 1 through 4—since under the plea agreements, Petitioners waived any statute of limitations challenge to the forgone charges—which would result in a mandatory minimum sentence of seven years on each, to be served consecutively (for a total of 28 years). (*Perez*, Dkt. 81 at 8; *Rutledge*, Dkt. 74 at 8; *Middlebrooks*, Dkt. 65 at 8; *Miller*, Dkt. 69 at 8; *see also Perez*, Dkt. 34 at ¶ 17, *Rutledge*, Dkt. 31 at ¶ 17; *Middlebrooks*, Dkt. 32 at ¶ 17; *Miller*, Dkt. 17 at ¶ 19 (stating that if convictions are vacated, including by way of collateral attack, "the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government," and waiving statute of limitations defense as to any other federal criminal offense not time-barred as of the date of the agreement, and making waiver effective for six months following vacatur of the convictions becomes final)); *see also United States v. Jones*, 541 F. Supp. 3d 325, 330 (S.D.N.Y. 2021) (noting language in plea agreement contemplating that upon vacatur of a count of conviction, the government may seek reinstatement of charges dismissed at sentencing or bring new charges, and concluding that "the parties' plea agreement does not preclude the Government from seeking a superseding indictment").

Petitioners argue that the Court should vacate their guilty pleas and the corresponding sentence on count 6, but otherwise leave the rest of the plea agreement and the sentence on those corresponding counts intact. (*Perez*, Dkt. 80 at 5; *Rutledge*, Dkt. 73 at 4; *Middlebrooks*, Dkt. 64 at 4; *Miller*, Dkt. 68 at 14 & Dkt. 70 at 6). Petitioners argue that vacatur of count 6 would not undermine the entire plea agreement or prevent them from being resentenced on the remaining counts. They cite *United States v. Barron*, 172 F.3d 1153 (9th Cir. 1999), where the Ninth Circuit held that when a motion to vacate asserts

that a count of the agreement was void as a matter of law, it does not attack the plea agreement, and the guilty plea as to the criminal acts can remain in force, even if the sentence imposed on an innocent act is set aside. (*See, e.g.*, *Perez*, Dkt. 80 at 4-5; *Middlebrooks*, Dkt. 64 at 4-5; *Miller*, Dkt. 70 at 7).

As an initial matter, the Court does not find Petitioners' position—that the Court should simply dismiss the conviction and sentence on count 6—to be persuasive, including because it would deprive the government of its bargain under the plea agreement. "[P]lea agreements can have extremely valuable benefits to both sides—most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt." *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997); *see also United States v. Green*, 139 F.3d 1002, 1004 (4th Cir. 1998) ("A plea agreement confers on both parties some control over the evidence upon which, and the crimes for which, a defendant will be sentenced. The government bargains for admission of facts sufficient to support the imposition of a sentence within a largely predictable range. The defendant bargains for some limit to the crimes for which he will be sentenced, a measure of predictability as to that sentence, and often for substantial-assistance motions. At the heart of the parties' exchange is the agreement that the defendant will substantially serve the sentence imposed on the basis of conduct that the defendant has admitted.").

Here, the government forwent four § 924(c) charges during the plea-bargaining process, based on the brandishing of the firearm during the first four completed Hobbs Act robberies. Despite Petitioners' admitting to this conduct in their plea agreements, the

government did not pursue those charges. At the same time, the guilty plea to at least one § 924(c) charge, based on the discharge of the firearm during the fifth robbery, gave the government some level of certainty as to Petitioners' sentencing exposures—namely, at least a 120-month prison sentence, to run consecutive to the sentence imposed by the Court on any other count. And in turn, Petitioners fully benefited from not being prosecuted on the four additional § 924(c) charges. In other words, the plea agreement provided benefits to both the government and Petitioners, and removing the conviction on the § 924(c) count significantly diminishes the benefit received by the government. It also does not reflect the seriousness of the crimes to which Petitioners pleaded guilty. Petitioners may not use their motion to vacate as a sword to invalidate the conviction on count 6, and simultaneously use it as a shield to argue that the Court should simply eliminate the 120-month sentence on count 6, but otherwise leave the sentence intact. *See, e.g.*, *United States v. Jones*, 100 F.4th 103, 110 (2d Cir. 2024) ("Allowing [the defendant] to secure the benefits of the plea agreement while disclaiming its burdens would undermine the purpose of the plea-bargaining process."); *United States v. Bunner*, 134 F.3d 1000, 1005 (10th Cir. 1998) ("A basic assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c). Absent this assumption, neither party would have entered into the December 16, 1994 plea agreement.").

Courts in this Circuit have indicated that a *de novo* resentencing would be proper under circumstances like those presented here. For example, in *United States v. Hall*, 58 F.4th 55 (2d Cir. 2023), the Second Circuit discussed the district court's consideration of

the sentence previously imposed after the petitioner's § 924(c) conviction had been vacated.  In *Hall*, the defendant pleaded guilty to conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and unlawful use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  *Id.* at 57.  He subsequently brought a motion to vacate his § 924(c) conviction based on the Supreme Court's decision in *Davis*, which held that conspiracy to commit Hobbs Act robbery was no longer a crime of violence.  *Id.*   The court remanded the case to the district court, with the following instructions:

> On remand, the government is free to argue to the district court (or the district court may conclude *sua sponte*) that the 36-month sentence originally imposed with respect to Count Three is not adequate, when no longer supplemented by the 60-month consecutive sentence on Count Five, to fulfill the purposes of sentencing.  *See* 18 U.S.C. § 3553(a).  If the district court so concludes, it may resentence on Count Three.  Important to note in this regard is that Hall served almost all of his eight-year sentence imposed with respect to Counts Three and Five, and was released from federal custody on January 7, 2022.  The district court should consider these changed circumstances, the relevant changes in law, and any arguments that either Hall or the government might advance with respect to the continuing validity of any aspects of the plea agreement.

*Id.* at 63-64; *see also United States v. Lorenzana*, No. 3-cr-1256 (JGK), 16-cv-4355 (JGK), 2024 WL 5047224, at *12-13 (S.D.N.Y. Dec. 9, 2024) (granting motion to vacate § 924(c) convictions, explaining that "[w]hen courts invalidate a defendant's § 924(c) conviction, courts routinely vacate the defendant's entire sentence on all counts so that the district court may increase the sentences for any remaining counts if such an increase is warranted," and permitting a *de novo* resentencing on all counts) (quotations and citations omitted); *Crowder v. United States*, No. 16 CV 4403 (CM), 05 CR 67-02 (CM), 2023 WL 5097803,

at *3 (S.D.N.Y. Aug. 9, 2023) (discussing that after vacating § 924(c) conviction, the court may, in its discretion, conduct a *de novo* resentencing or enter an amended judgment, and noting that "a resentencing is often warranted after vacatur of a § 924(c) conviction 'so that the district court may increase the sentences for any remaining counts'") (citation omitted). In *Pena*, the Second Circuit went so far as to say that, when a sentencing is anything more than "strictly ministerial . . . a district court abuses its discretion when it denies *de novo* resentencing." *Pena*, 58 F.4th at 623.

Other courts have taken a similar approach—in other words, resentencing on all remaining counts, rather than simply vacating the sentence on the § 924(c) conviction— likening the original sentencing on multiple counts to be a "package" and vacatur of one of those counts to be an "unbundling":

> The court construes the multiple sentences given a defendant convicted of more than one count of a multiple count indictment as 'a package,' reflecting the likelihood that the sentencing judge will have attempted to impose an overall punishment taking into account the nature of the crimes and certain characteristics of the criminal. When part of the sentence is set aside as illegal, the package is 'unbundled.' After the unbundling the district court is free to put together a new package reflecting its considered judgment as to the punishment the defendant deserves for the crimes of which he is still convicted.

*United States v. Handa*, 122 F.3d 690, 691-92 (9th Cir. 1997) (discussing approach taken by District of Columbia, the First, Third, Fourth, Fifth, Seventh, and Eighth Circuits); *see also United States v. Christy*, No. CV 15-0881 JB/LAM, CR 10-1534 JB, 2016 WL 9777167, at *7 (D.N.M. May 5, 2016) ("Since a § 924(c) firearm conviction depends upon the underlying drug conviction, the two convictions are typically considered 'interdependent,' such that a successful challenge to one results in vacatur of the entire

'sentencing package.'  Under this principle, a defendant can be resentenced even on an unchallenged drug conviction, and may even be subjected to a more severe sentence than was initially imposed."), *adopted*, 2016 WL 4491856 (D.N.M. June 30, 2016).

Some courts have concluded that vacating a § 924(c) conviction vitiates the entire plea agreement and justifies the reinstatement of previously dismissed counts—in other words, essentially returning the defendant and the government to their pre-plea positions. For example, in *Bunner*, the Tenth Circuit affirmed the district court's reinstatement of previously dismissed charges against the defendant following the vacatur of a § 924(c) conviction:

> The district court's decision ultimately resulted in Defendant being relieved of his obligations under the plea agreement.  Therefore, although the parties were technically able to perform according to the letter of the agreement, Defendant's performance, for all practical purposes, became worthless to the government.  This resulted in the underlying purpose of the agreement being frustrated and the basis of the government's bargain being destroyed.  Thus, under the frustration of purpose doctrine, the government's plea agreement obligations became dischargeable.  The government now faced a choice.  It could perform according to the letter of the plea agreement or it could seek discharge of its duties on the basis that intervening events frustrated its ultimate objective.  The government chose to be discharged and return the parties to the positions they occupied before Defendant entered his guilty plea.
>
> Upon restoration of the status quo ante, the plea agreement no longer bound the parties.  Therefore, no obligation remained which prohibited the government from reinstating the previously dismissed charges.

*Bunner*, 134 F.3d at 1005 (citation omitted); *United States v. Lewis*, 138 F.3d 840, 842 (10th Cir. 1998) ("[T]he broad and flexible remedial power conferred on the district court by section 2255 together with the interdependence of the various counts disposed of in a plea agreement . . . provide the district court with authority to vacate an entire plea

- 28 -

agreement when a conviction that is part of the plea package is vacated."); *United States v. Johnson*, 420 F. Supp. 3d 462, 469, 472-73 (E.D. Va. 2019), *aff'd*, 13 F.4th 348 (4th Cir. 2021) ("upon granting Defendant's § 2255 Motion and vacating his convictions on Counts Seven and Nine, which are the only counts he pled guilty to and was convicted of by this Court, the Court has effectively vacated the Defendant's guilty plea," and agreeing with analysis in *Bunner*, that "[v]acating Defendant's § 924(c) convictions under Counts Seven and Nine has undermined the main objectives of the plea agreement—that Defendant would be convicted and serve time under Counts Seven and Nine for violating § 924(c)— thereby depriving the Government of the basis of its bargain"); *see also United States v. Fender*, No. 16-cr-124 (KAM), 2023 WL 3663016, at *4-5 (E.D.N.Y. May 25, 2023) (following vacatur of the defendant's § 924(c) conviction, holding that the statute of limitations waiver in the plea agreement was not sufficiently specific to permit the government to reinstate previously dismissed count, but concluding that dismissed count should be reinstated under 18 U.S.C. § 3296)[4]; *but see Rivera*, 2023 WL 1766209, at *6 (following vacatur of the petitioner's § 924(c) conviction, stating that the government was

---

[4]      18 U.S.C. § 3296(a) provides:
         [A]ny counts of an indictment or information that are dismissed pursuant to
         a plea agreement shall be reinstated by the District Court if—
         (1) the counts sought to be reinstated were originally filed within the applicable
         limitations period;
         (2) the counts were dismissed pursuant to a plea agreement approved by the District
         Court under which the defendant pled guilty to other charges;
         (3) the guilty plea was subsequently vacated on the motion of the defendant; and
         (4) the United States moves to reinstate the dismissed counts within 60 days of the
         date on which the order vacating the plea becomes final.

"free to renew its motion to reinstate Counts One, Four and Five of the Superseding Indictment," but also noting that "judicial resources and those of the parties could be preserved by proceeding directly to resentencing on Count Three rather than reopening the Superseding Indictment for negotiation of a new plea agreement or pursuing a trial on charges originally brought in 2008. . . .  At the same time, resentencing would also allow for consideration of Rivera's procedural arguments for a reduction in sentence, as well as the submission of updated material regarding the section 3553(a) factors, which are currently not reflected in the record").

Petitioners cite the Ninth Circuit's opinion in *Barron*, where the defendant pleaded guilty to three counts in an indictment, including being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm relating to a drug trafficking crime, in violation of § 924(c).  172 F.3d at 1155.  Defendant pleaded guilty to all three counts, and the government agreed to not seek further prosecution arising out of the facts underlying the indictment, despite that other evidence and charges could have been brought against the defendant.  *Id.*  The parties did not agree to a specific sentence, but the government agreed that the defendant would not be sentenced under the Armed Career Criminal statute, which provided for a penalty of 15 years to life.  *Id.*  Thereafter, following *Bailey v. United States*, 516 U.S. 137 (1995), where the Supreme Court held that the use of a gun under § 924(c) meant "active employment," the defendant moved to vacate.  *Id.* at 1156.  The magistrate judge recommended that the defendant's motion to vacate be granted, but that at the same time the plea agreement should be rescinded.  *Id.*  The district

- 30 -

court agreed, finding that the motion to vacate should be conditioned on the defendant's

timely withdrawal of his plea, and this conclusion was affirmed on appeal. *Id.* But

following a rehearing *en banc*, the Ninth Circuit reversed, holding that when a defendant

moves under 28 U.S.C. § 2255 to set aside an illegal conviction and a sentence once

imposed as part of a plea agreement, the district court should not set aside the entire plea

agreement. *Id.* at 1155. In reaching this conclusion and reversing the district court's

determination, the court explained:

> Barron's motion purely and simply asked the district court to vacate a
> conviction that was void as a matter of law. The motion did not attack the
> plea agreement in any way. The motion did not assert that Barron had
> entered the plea agreement unknowingly and involuntarily. The motion did
> not assert that his conviction of use of a gun was unconstitutional. Barron's
> motion proceeded on a recognized basis for seeking federal habeas corpus,
> viz. that he was confined under a void conviction and therefore under a
> sentence not authorized by law. It is only the analysis of the district court
> that turned this simple motion into something more, a challenge to the plea
> agreement. The district court had no authority to invent a new basis for
> Barron's motion and erred in doing so.

*Id.* at 1158 (citation omitted).

To be clear, the government has not asked that the Court vacate the plea agreement,

nor do Petitioners take that position (although the government, in its supplemental

submissions, alludes to seeking a superseding indictment charging the use of the firearm

in connection with the first four robberies)—and therefore the applicability of *Barron* is

questionable. And as further explained below, the Court is not going to set aside the plea

agreements. In its supplemental submissions, the government acknowledges that vacating

count 6 would have the "practical" effect of undoing the parties' agreement, since the

package of charges was the entire purpose of the plea-bargaining process in the case. But

it also notes that vacatur of count 6 does not void the agreement, including because counts 1 through 5 remain intact, and the Court could "simply reimpose the same sentence previously imposed, albeit by allocating the time differently between Counts 1 through 5 to reach the same net result." (*See Perez*, Dkt. 81 at 7-8; *Rutledge*, Dkt. 74 at 7-8; *Middlebrooks*, Dkt. 65 at 7-8; *Miller*, Dkt. 69 at 7-8). Further, this is not the case where all the charges to which Petitioners pleaded guilty were vacated, rendering the plea agreement meaningless. Rather, five Hobbs Act robberies remain as viable convictions.

Having considered the aforementioned authority and the flexible remedial power possessed by the district court in adjudicating a motion to vacate, coupled with the procedural posture of the cases and the relevant Second Circuit precedent, the Court finds that *de novo* resentencing on counts 1 through 5 of the information is the appropriate remedy. As to Petitioners' argument, simply vacating the plea and corresponding sentence on count 6 would undermine the plea agreement and would also not accurately reflect consideration of the § 3553(a) factors, nor is that approach supported by the relevant case law. Consistent with the Second Circuit's instruction in *Hall*, the government may argue that the sentences originally imposed with respect to counts 1 through 5 are no longer adequate, when no longer supplemented by the 120-month consecutive sentence on count 6, to fulfill the purposes of sentencing. *See* 18 U.S.C. § 3553(a); *see also United States v. Vanderpool*, No. 20-3521, 2022 WL 190432, at *3 (2d Cir. Jan. 21, 2022) (where the defendant was originally sentenced to 168 months for violations of 18 U.S.C. § 1962(d) and 18 U.S.C. § 924(c)(1)(A)(iii), but the § 924(c) conviction was subsequently vacated, affirming the district court's resentencing the defendant to 156 months, explaining that "at

resentencing the district court adequately considered [the defendant's] background and the gravity of his offense conduct, and provided a sufficiently detailed description of the basis of the sentence to satisfy its obligations with regard to an above-Guidelines sentence").

## IV.    **CONCLUSION**

For the foregoing reasons, Petitioners' § 2255 motions are granted.  Petitioners shall have a *de novo* resentencing on counts 1 through 5 of the information to which they have pleaded guilty and which remain viable convictions.  The Court will direct the United States Probation Office to prepare revised Presentence Investigation Reports, the Court will issue revised Sentencing Guideline Orders, and resentencing dates will be scheduled.

The Clerk of Court is directed to close the following cases: Civil Action No. 6:22-cv-06288-EAW; Civil Action No. 6:23-cv-06282-EAW; Civil Action No. 6:23-cv-06298-EAW; and Civil Action No. 6:23-cv-06335-EAW.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    July 22, 2025
          Rochester, New York

- 33 -